UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JAMES SANDERS,                                    Civ. Action No.: 1:20-cv-4105

            Plaintiff,                          **COMPLAINT**

                                   Trial By Jury Demanded

   -against-

PUBLIC HOTEL, 215 CHRYSTIE MANAGEMENT, LLC,
215 CHRYSTIE LLC, JEAN-GEORGES ENTERPRISES, LLC,
JEAN-GEORGES MANAGEMENT LLC, and MARIA ESCALLON
in her individual and professional capacities.

             Defendants.

------------------------------------------------------------X

Plaintiff JAMES SANDERS (hereinafter "Plaintiff") by and through his attorneys, Law

Office.of Cohen & Jaffe, LLP, whose offices are located at 2001 Marcus Avenue, Suite

W295 Lake Success, New York 11042, alleges upon knowledge and belief with respect

to himself, and upon knowledge, information and belief as to all other matters as follows:

### Preliminary Statement:

1.      The Public Hotel (hereinafter the "Hotel") is located in Manhattan, one of

the most open-minded, vibrant, and LGBTQ+ friendly areas in all of New York. The

Hotel, an establishment within the larger network of Defendant 215 Chrystie

Management, LLC, and Defendant 215 Chrystie LLC (hereinafter "Defendants Chrystie"

and together with the Hotel and other Defendants below, the "Defendants") boasts that it

is centrally located to all of downtown New York City and bills itself to visitors as a

place that offers "A New Idea for a New Age."

2.      Unfortunately for Mr. Sanders (hereinafter "Plaintiff"), a former employee

of Defendants, the "new age" Defendants had to offer him was rife with blatant sexual

harassment, gender/sexual orientation discrimination, racism, disparate pay and unfair treatment.

3.      Briefly, Plaintiff, a black man who identifies his sexual orientation as gay, began working for Defendants as a reservationist in 2018.

4.      Plaintiff's job was to book reservations over the phone and online for both the Hotel and its onsite restaurants which were, upon information and belief, owned and operated by Defendant Jean-Georges Enterprises, LLC, and Defendant Jean Georges Management LLC, (hereinafter both referred to as Defendant Jean-Georges and collectively, with aforementioned Defendants, where appropriate, as "Defendants."). Throughout his tenure, Plaintiff proved himself a hard-working and reliable employee who garnered the respect of his peers.

5.      Sadly, Plaintiff's achievements and hard work were overshadowed by disparate treatment on the basis of his race. Specifically, he and other black reservationists were paid less than white reservationists (many of whom had less experience or were hired after Plaintiff) for the same work.

6.      In addition to the racial discrimination, Defendant Maria Escallon, the woman who hired Plaintiff for the job and a key part of the Defendants' management team, sexually harassed Plaintiff and discriminated against him on the basis of his gender/sexual orientation.

7.      Indeed, Defendant Escallon made comments about Plaintiff's sexual orientation, repeatedly harassed him at work, and once forced him to tape her bare breasts into a dress in the middle of the Defendants' facility.

8. Plaintiff made frequent complaints about the pay disparity as well as the harassing conduct of his supervisors. When Plaintiff complained, the retaliation began.

9. In retaliation for Plaintiff's good faith complaints about the hostile working environment, his hours were greatly reduced, affecting Plaintiff's ability to pay bills.

10. Plaintiff's simple request that Defendant Escallon no longer be allowed to frequent his workspace to harass him was ignored. Defendants' ultimately discharged Plaintiff in retaliation for his complaints.

11. Accordingly, this is a civil action brought on behalf of Plaintiff against Defendants for gender/sexual orientation, race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964[1] (hereinafter "Title VII"). Plaintiff was subjected to disparate treatment discrimination, racial discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. Further, Defendants subjected Plaintiff to sexual orientation discrimination, sexual harassment, racial discrimination and retaliation in violation of the New York City Human Rights Law (hereinafter "NYCHRL") and the New York State Human Rights Law (hereinafter "NYSHRL"), along with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

## The Parties:

12. At all times relevant to this Complaint, Plaintiff was and is a homosexual African-American male citizen of the United States residing in Queens County. At all

---

[1] *See Zarda v. Altitude Express*, 883 F.3d 100 (2d Cir. 2018) (holding sexual orientation discrimination was discrimination "because of sex" and was therefore prohibited under Title VII in New York State).

times relevant to this Complaint, Plaintiff was an "employee" of Defendants as that term is defined by all applicable federal, state, and local laws, including but not limited to, Title VII, the NYSHRL and the NYCHRL.

13. Upon information and belief, at all times relevant to this Complaint, Defendant PUBLIC Hotel was and still is a hospitality facility with a principal place of business located at 215 Chrystie Street, New York, New York, 10002.

14. Upon information and belief, at all times relevant to this Complaint, Defendant 215 Chrystie Management LLC was and still is a hotel development, ownership, and management company with its principal place of business located at 215 Chrystie Street, New York, New York, 10002.

15. Upon information and belief, at all times relevant to this Complaint, Defendant 215 Chrystie LLC was and still was and still is a hotel development, ownership, and management company with a principal place of business located at 215 Chrystie Street, New York, New York, 10002.

16. Upon information and belief, at all times relevant to this Complaint, Defendant Jean-Georges Management LLC was and still is a restaurant development, ownership, and management company with its main place of business located at 111 Prince Street, 2nd Floor, New York, New York 10012.

17. Upon information and belief, at all times relevant to this Complaint, Defendant Jean-Georges Enterprises LLC was and still is a restaurant development, ownership, and management company with with its main place of business located at 111 Prince Street, 2nd Floor, New York, New York 10012.

18. Upon information and belief, and at all times relevant to this Complaint,

Defendant Maria Escallon (hereinafter "Defendant Escallon") is the Director of Restaurants at Public Kitchen for Defendant Georges, with a principal place of business located at 215 Chrystie Street New York, New York 10002.

19.     At all relevant times, Defendants were, jointly and/or separately, Plaintiff's "employer(s)" as that term is defined by Title VII, the NYSHRL and the NYCHRL.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT:

20.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and § 1343.

21.     This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy.

22.     Venue is proper pursuant to 28 U.S.C. § 1391 because (1) the events which give rise to the Plaintiff's claims took place in New York County, New York which is located in the Southern District of New York and (2) Defendants are located in New York County, New York which is in the Southern District of New York.

23.     On or about March 14, 2019, Plaintiff filed a pro-se timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

24.     After retaining counsel, Plaintiff filed an amended charge of discrimination with the EEOC on or about January 28, 2020.

25.     On or about February 29, 2020, Plaintiff received a Notice of Right to Sue letter from the EEOC.

## FACTUAL ALLEGATIONS:

*Plaintiff Commences Employment with Defendants*

26. Defendants hired Plaintiff as a reservationist in or around April 2018. His job was to manage and book reservations for hotel guests as well as reservations for the facility's on site restaurants, bars and lounge.

27. Plaintiff was brought in for an interview with Defendant Escallon and was offered the job same day, and was hired at a rate of pay of $15.00 per hour.

28. PUBLIC Hotel, operated by Defendants Chrystie and Defendant PUBLIC Hotel, has a restaurant and bar, called PUBLIC Kitchen that is jointly staffed and operated by Defendant Jean-Georges' staff.

29. All Defendants were jointly responsible for managing the hotel, onsite restaurants, bars, and lounges all located at 215 Chrystie Street as well as all employees.

30. Plaintiff was responsible for arranging reservations for the restaurant and the hotel, and was supervised by Defendant Escallon as well as others.

*Gender/Sexual Orientation Discrimination, and Sexual Harassment Begins*

31. Nearly as soon as Plaintiff began his employment, Defendant Escallon began harassing him on the basis of his sexual orientation.

32. Plaintiff is an "out" gay man, something he never hid at work as he is unashamed of his sexual orientation.

33. Defendant Escallon, knowing Plaintiff was gay, would repeatedly and persistently refer to Plaintiff's sexuality at work, specifically asking if he liked certain types of men and asking his opinion on fashion as she believed he had expertise in those areas because he is a homosexual man.

34. Plaintiff was increasingly uncomfortable with these interactions.

35. Defendant Escallon would come to Plaintiff's work area, pull up websites of clothing and dresses and ask his opinion of them, specifically stating that the she was asking him "because" he was a gay man.

36. Defendant Escallon would make lewd comments about the physical attributes of male guests and celebrities and ask Plaintiff's opinion of their physical attributes.

37. Defendant Escallon would incessantly try to engage Plaintiff in sexual conversations at work.

38. Plaintiff repeatedly and clearly made his discomfort with this line of conversation known, but felt unable to be more forceful in his rebukes as Defendant Escallon had hired him and was acting in a supervisory capacity.

39. Defendant Escallon escalated her inappropriate behavior on or about May 13, 2018.

40. On that date, Defendant Escallon came down to Plaintiff's office and demanded that he leave his post and purchase double-sided tape (commonly referred to as "body tape") for her because her dress was not staying properly secured.

41. Plaintiff did not want to leave his post while on the clock, but did not feel that he could refuse Defendant Escallon's demands, so Plaintiff went to the CVS down the street and purchased the tape.

42. When Plaintiff returned to the hotel, Defendant Escallon came into Plaintiff's workspace and began disrobing. Defendant Escallon was entirely naked from

the waist up, and handed Plaintiff the body tape demanding that he secure it to her bare breasts.

43.    Plaintiff was incredibly uncomfortable and hesitated to do what Defendant Escallon demanded.

44.    Defendant Escallon noticed the hesitation and instead of changing course, she informed Plaintiff that because he was "into fashion" and gay that he should have no problem helping her into her dress.

45.    Prior to her topless antics, Defendant Escallon had told Plaintiff on numerous occasions that she was "untouchable" at the Defendants' companies and that she "did not answer to" anyone in management or human resources.

46.    Knowing Defendant Escallon's position at the company, Plaintiff assisted his half-naked supervisor into her dress.

*Racial Discrimination and Disparate Pay*

47.    In addition to Defendant Escallon's escalating harassment, Plaintiff was paid less than his Caucasian counterparts for the exact same work.

48.    Specifically, when Plaintiff was hired he was paid $15.00 per hour, as were the other reservationists.

49.    In approximately August 2018, there were three reservationists on staff, Plaintiff, Madison Crawford and Nathan Keep.

50.    Both Ms. Crawford and Mr. Keep (both Caucasian) were hired well after Plaintiff but were making $18.00 per hour, a full three dollars per hour more than Plaintiff.

51.     Plaintiff complained about the pay discrepancy to Defendant Escallon who took no action.

52.     In or about October 2018, in response to Defendant Escallon's inaction on the pay discrimination matter, Plaintiff contacted Dan Daley, the general manager of the PUBLIC Hotel, and requested a meeting.

53.     In that meeting, Plaintiff specifically complained about the disparate pay and the harassment he had endured while working for Defendants.

54.     Mr. Daley told Plaintiff that he would speak to Defendant Escallon "immediately." Mr. Daley further assured Plaintiff that Defendant Escallon would be told to stay away from him during his shifts.

*Retaliation for Good Faith Complaints*

55.     However, after this meeting, Defendant Escallon, clearly upset that Plaintiff had complained, immediately began scheduling Plaintiff for less and less hours.

56.     Prior to September 22, 2018, Plaintiff had been scheduled for 25-40 hours per week. After Plaintiff had made a complaint to management, he was scheduled for 15 hours per week, sometimes even less.

57.     Further, Defendants hired another black reservationist at only $15.00 per hour, despite the fact that the Caucasian reservationists that were hired were making $18.00 per hour, continuing to pay black employees less than their similarly situated Caucasian counterparts for the same work.

58.     No less than a week after Mr. Daley assured Plaintiff that his harasser would not be permitted near him during his shifts, Defendant Escallon came to Plaintiff's office and sat at his desk.

59.     Immediately upon seeing her in his office, Plaintiff went to Tim Kirkpatrick's office, the head of People and Culture (what Defendants' call their Human Resources department) for Defendant PUBLIC Hotel and Defendants Chrystie, and asked that Defendant Escallon be removed from his office.

60.     Emily Mager, who works for Tim Kirkpatrick, asked Plaintiff to wait in Social (an adjacent lounge area within the Hotel) while she "took care of it" and then came back a few minutes later to tell Plaintiff he could safely return to his office and further informed Plaintiff that Defendant Escallon was given strict instructions not to enter Plaintiff's office for any reason.

61.     Despite that assurance, on or about October 30, 2018, Defendant Escallon again began attempting to engage with Plaintiff in his office in an effort to further intimidate him.

62.     Plaintiff complained via email to People and Culture (HR) on numerous occasions.

63.     Nothing was done and Defendant Escallon continued to come into Plaintiff's office to harass him, and the Defendants did nothing despite numerous written complaints about the continued harassment.

64.     Plaintiff even informed the Defendants that he had filed a police report regarding the harassment because he felt physically threatened, and yet Defendant Escallon's behavior continued unabated.

65.     Plaintiff sought counseling and therapy to help him in coping with the ongoing harassment at work and continues that treatment to this day.

66.     It was clear to Plaintiff that the Defendants had no intention of abating the harassment or rectifying the discriminatory pay structure.

67.     In response to Plaintiff's repeated efforts to have the harassment abated and the racially disparate pay structure corrected, Plaintiff was retaliated against and ultimately discharged by Defendants on March 14, 2019.

## CAUSES OF ACTION:

### AS AND FOR THE FIRST CAUSE OF ACTION (Gender/Sexual Orientation Discrimination in Violation of Title VII of the Civil Rights Act of 1964)[2]

68.     Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if set forth herein.

69.     Defendant PUBLIC HOTEL is a hotel located in the State of New York.

70.     Defendant 215 Chrystie Management, LLC is a hospitality group incorporated under the laws of the State of New York.

71.     Defendant 215 Chrystie, LLC is a hospitality group incorporated under the laws of the State of New York.

72.     Defendant Jean-Georges Enterprises, LLC is a hospitality group incorporated under the laws of the State of New York.

73.     Defendant Jean-Georges Management, LLC is a hospitality group incorporated under the laws of the State of New York.

74.     Plaintiff is a black homosexual male and is, therefore, a member of a protected class under the Title VII of the Civil Rights Act of 1964.

---

[2] *See Zarda v. Altitude Express*, 883 F.3d 100 (2d Cir. 2018) (holding sexual orientation discrimination was discrimination "because of sex" and was therefore prohibited under Title VII in New York State).

75.     Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

76.     As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of his gender/sexual orientation.

77.     The discrimination Plaintiff suffered while employed at Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

78.     As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate discipline on the basis of his gender/sexual orientation.

79.     The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment.

80.     By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

81.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

82.     Based on the foregoing, Defendants discriminated against Plaintiff on the basis of his race, gender/sexual orientation in violation of Title VII of the Civil Rights Act of 1964.

## AS AND FOR A SECOND CAUSE OF ACTION (Sexual Orientation Discrimination and Sexual Harassment in Violation of the New York City Human Rights Law and the New York State Human Rights Law)

83.     Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if set forth herein.

84.    Defendant PUBLIC HOTEL is a hotel located in the State of New York.

85.    Defendant 215 Chrystie Management, LLC is a hospitality group incorporated under the laws of the State of New York.

86.    Defendant 215 Chrystie LLC is a hospitality group incorporated under the laws of the State of New York.

87.    Defendant Jean-Georges Enterprises, LLC is a hospitality group incorporated under the laws of the State of New York.

88.    Defendant Jean-Georges Management LLC is a hospitality group incorporated under the laws of the State of New York.

89.    Plaintiff is a black homosexual male and is, therefore, a member of a protected class under the NYSHRL and the NYCHRL.

90.    Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

91.    As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of his sexual orientation and subjected him to sexual harassment.

92.    The discrimination Plaintiff suffered while employed at Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

93.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate discipline on the basis of his sexual orientation and subjected Plaintiff to sexual harassment.

94.     The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment.

95.     By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

96.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

97.     Based on the foregoing, Defendants discriminated against Plaintiff on the basis of his sexual orientation and subjected Plaintiff to sexual harassment in violation of the New York State Human Rights Law and the New York City Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION (Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law)

98.     Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if set forth herein.

99.     Defendant PUBLIC HOTEL is a hotel located in the State of New York.

100.    Defendant 215 Chrystie Management, LLC is a hospitality group incorporated under the laws of the State of New York.

101.    Defendant 215 Chrystie LLC is a hospitality group incorporated under the laws of the State of New York.

102.    Defendant Jean-Georges Enterprises, LLC is a hospitality group incorporated under the laws of the State of New York.

103.    Defendant Jean-Georges Management LLC is a hospitality group incorporated under the laws of the State of New York.

104. Plaintiff is a black male and is, therefore, a member of a protected class under the Title VII, the NYSHRL and the NYCHRL.

105. Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

106. As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of his race.

107. The discrimination Plaintiff suffered while employed at Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

108. As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment on the basis of his race.

109. The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment.

110. By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

111. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

112. Based on the foregoing, Defendants discriminated against Plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law)

113. As set forth in detail above, Defendants subjected Plaintiff to a hostile work environment, disparate treatment, discrimination, sexual harassment and an atmosphere of adverse employment actions and decisions on the basis of his race, sexual orientation and gender in violation of Plaintiff's statutory rights as guaranteed by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law.

114. Plaintiff complained to Defendants regarding the rampant sexual orientation discrimination, gender discrimination, sexual harassment, racial discrimination and the hostile work environment he was subjected to during his employment with Defendants.

115. Defendants ignored Plaintiff's complaints and failed to carry out any thorough investigation into the merits of Plaintiff's reports of discrimination, a hostile work environment, and retaliation.

116. Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of sexual orientation discrimination, sexual harassment, racial discrimination and a hostile work environment, which retaliation culminated in Plaintiff's termination.

117. The retaliation substantially interfered with the terms and conditions of Plaintiff's employment.

118.   By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

119.   As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

120.   Based on the foregoing, Defendants retaliated against Plaintiff for his lawful complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law.

## DEMAND FOR JURY TRIAL:

121.   Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all claims/issues.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.   A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned Federal and New York State and New York City laws;

b.   Preliminary and permanent injunctions against Defendants and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.   An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

d.     All compensatory, actual, and other damages that Plaintiff has sustained as a result of the Defendants' unlawful discriminatory conduct, including, but not limited to, back pay, front pay, damages to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment, punitive damages, emotional distress damages, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

e.     Awarding Plaintiff his costs and disbursements incurred in connection with this action, including his reasonable attorneys' fees, expert witness fees, and other costs;

f.     Pre-judgment and post-judgment interest, as provided by law; and

g.     Any other and further relief as this Court finds just, necessary and proper.

Dated: May 28, 2020

Caitlin A. McNaughton, Esq.

Law Office of Cohen & Jaffe, LLP

2001 Marcus Avenue, Suite W295

Lake Success, New York 11042

Tel.: 516-358-6900

cam@cohenjaffe.com